### O'ROURKE DRY DOCK CO. v. NEVILLE.

(District Court, D. New Jersey. August 3, 1911.)

SHIPPING (§ 76*)—SUIT FOR REPAIRS—EVIDENCE CONSIDERED.

A dry dock company allowed only a part of its claim for repairs made to respondent's vessel, it appearing from the evidence that the dock collapsed and caused injury to the vessel while she was being repaired, and it not being shown by libelant how much of the claim was for repairs made necessary by such injury, nor by respondent how much damage he sustained thereby.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 323–325; Dec. Dig. § 76.*]

In Admiralty. Suit by the O'Rourke Dry Dock Company against Michael K. Neville. Decree for libelant for part of claim.

Martin A. Ryan, for libelant.
James J. Macklin, for respondent.

RELLSTAB, District Judge. The libel is in personam, and alleges two causes of action. Both are for repairs, the first to the boat "Dr. B. R. Holcomb," and the other to the boat, "George F. Lang." The amounts claimed are $115.23 and $56.12, respectively.

The defenses are: As to the Holcomb, that she was seriously injured while in the custody of libelant, through its carelessness, and that the loss of time in the use of the boat while such injuries were be-

ing repaired exceeds in value the bill of repairs rendered. As to the Lang, that she was not owned by the respondent at the time such repairs were made, and that he did not order the same to be made. The testimony is very conflicting, and in many respects irreconcilable. Some of the witnesses contradict themselves in important particulars, and the record is not wanting in suggestion that some of the testimony has been influenced by a bias seriously affecting credibility. The duty of balancing conflicting testimony, never easy, is made particularly difficult in this case because of such suggestion, the elicitation of many answers by grossly leading questions, the introduction of incompetent testimony, and the irreconcilable character of much of the evidence. There is no question but that libelant made repairs to both boats, but in respect to the Holcomb much of the time spent and the labor and materials furnished were rendered necessary by the collapse of the dry dock after such boat was placed thereon. The real cause of such collapse is in dispute; but, whatever the cause, the dock careened, producing a twist in the boat, causing her to spring new and greater leaks. The filling of the boat as she sank with the dock to such an extent as to necessitate the removal of the captain and his family therefrom is not disputed; and the fact that the captain had theretofore been on the boat for the several days occupied in tugging it to libelant's wharf, and awaiting her being put on the dry dock, and the occupation of the cabin by him and members of his family while the boat was in the water outside of the dry dock awaiting to be placed thereon, proves that the prompt filling of the boat with water after the collapse of the dock was not due solely to defects in the boat before she was docked, but in large part to the twist received as the dock careened with the boat fastened thereto.

How much of the repairs charged would have been necessary had no collapse of the dock occurred is not clear. The libelant was in the best position to establish this, and, in view of my finding that injuries were sustained by the boat by such collapse, was required to assume such burden. But he offered no evidence on this point, taking the attitude that no injury was sustained by such boat as a result of such collapse. The respondent testified that $20 would pay for all the repairs that this boat needed. Self-interest, perhaps, has unduly minimized the cost of the needed repairs, as stated by him, and exaggerated the damage sustained by the flooding of the cabin, and from the forced nonuse of the boat pending the restoration of the dock to proper working condition, and while the boat was undergoing the extra repairs necessitated by reason of such twist. It is evident that some damage resulted to respondent in consequence of such flooding and extra nonuse of his boat. How much is uncertain; the respondent's proof in that behalf not being convincing.

Both parties having failed to meet the burden cast upon them, as aforesaid, the court finds itself more perplexed than helped by the record placed before it. It has reached the conclusion, however, after balancing the equities as best it can, that $40 be allowed the libelant for repairs to the Holcomb.

As to the Lang, the libelant has not established the ownership of

this boat in the respondent. The latter denied any ownership or interest therein, and that he ordered any repairs to be made thereto. Other witnesses called by him assert ownership in another, one of which claims such ownership and admits that he ordered such boat to be taken to the libelant's dock for repairs. As against this is the evidence of libelant alone, and this, so far as respondent's ownership or responsibility is concerned, is not of such a persuasive character as to justify a repudiation of the referred-to testimony introduced on behalf of the respondent, though some of it excites suspicion and distrust. No evidence was offered to show that respondent operated the Lang, or that he exercised any dominion over her, or shared in her earnings. If such ownership or interest existed, it was capable of proof, but none was offered.

As to the repairs to the Lang, no recovery can be had against respondent. A decree may be entered in favor of libelant for $40 and costs for repairs to the Holcomb.